<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| M. EAGLES TOOL WAREHOUSE, INC., d/b/a/ S&G TOOL AID CORP., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 97-1568 - (JAG) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| FISHER TOOLING COMPANY, INC., d/b/a ASTRO PNEUMATIC TOOL COMPANY AND STEPHEN FISHER, | : | |
| | : | |
| Defendants. | : | |

| | |
|---|---|
| FISHER TOOLING COMPANY, INC., d/b/a ASTRO PNEUMATIC TOOL COMPANY AND STEPHEN FISHER, | : |
| Counterclaimant, | : |
| | : |
| v. | : |
| | : |
| M. EAGLES TOOL WAREHOUSE, INC., d/b/a S&G TOOL AID CORP., | : |
| Counterclaim Defendants. | : |

<u>**GREENAWAY, JR., U.S.D.J.**</u>

This matter comes before this Court on the motion for partial summary judgment,

pursuant to FED. R. CIV. P. 56(c), by Defendant / Counterclaimant Fisher Tooling Company, Inc.,

doing business as Astro Pneumatic Tool Company ("Astro"). Astro has moved for summary

judgment on the all of the claims and affirmative defenses of Plaintiff and Counterclaim

Defendant M. Eagles Tool Warehouse, Inc., doing business as S&G Tool Aid Corp. ("S&G"),

except for S&G's non-infringement claim and non-infringement defense.  For the reasons set forth below, Astro's motion will be granted in part and denied in part.  Summary judgment will be granted for Astro on S&G's declaratory judgment claim for invalidity, and its Lanham Act, state law unfair competition, New Jersey Trade Act, and tortious interference claims.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties

S&G is a New Jersey corporation engaged in the manufacture and wholesale distribution of tools and associated products for the automobile repair industry.  Among the tools and parts that S&G sells are abrasive and semi-abrasive discs.  Consumers mount these discs onto motor units that rotate these discs so as to remove undesirable material from structures.

The subject matter at issue in this action is a disc known as an eraser wheel.  The eraser wheel is mounted to a hand held motor unit (also known as a "driver") to remove pin-striping, molding adhesive, decals, and other adhered items from autobody panels without damaging the paint or body of the vehicle.  S&G markets its eraser wheel under the name "Autobody Eraser Wheel."  S&G does not sell the hand held motor unit.  S&G sells its eraser wheel alone or in combination with an arbor.[1]  Without the arbor, S&G's eraser wheel is only compatible with the motor unit manufactured by Astro.  When used with the arbor, S&G's eraser wheel is compatible with many different motor units.

Astro is a California corporation also engaged in the business of selling tools and associated products for the automobile repair industry.  Defendant Stephen Fisher is the President

---

[1]An arbor is a device that can be attached to the stem of any driver to make the Autobody Eraser Wheel compatible with that driver.

of Astro.  For more than twenty years, Astro has sold pneumatic drivers[2] of several different types, which were used with hard grinding and polishing discs.  Astro did not, however, have a driver that was used with a soft eraser wheel.  Around 1990, Astro developed a driver that could be combined with a soft eraser wheel to remove pinstripes, molding adhesive, decals and other adhered items from the body of cars.  Astro markets its driver as the "Pinstripe Removal Tool 533E."  Astro also sells "Smart Eraser Pads 400E" for use with its driver.  Astro has obtained a patent protecting the combination of its driver with its eraser wheel.

**B.**     **The Patent and Astro's Efforts To Enforce It**

United States Patent No. 5,259,914 (the "'914 Patent") is entitled "Portable Vehicle Adhesive Remover for Removing Pinstripes, Decals, Side Moldings and Other Adhered Items from a Vehicle," and was issued on November 9, 1993 to Irving Fisher as inventor, and to Fisher Tool Company as assignee.  It protects "(a) a motor unit assembled inside a housing . . . ; (b) an extending shank . . .; and (c) an eraser unit attached . . . "  See '914 Patent, Abstract.[3]  The device operates by using compressed air to rotate the eraser wheel.  The rotating eraser wheel engages with an adhered decal on a vehicle, causing friction and generating heat, which in turn warms the adhesive and causes the decal to lose its adhesion.

The '914 Patent makes six claims, all of which relate to a portable vehicle adhesive remover consisting of an air-powered motor unit, a shank extending therefrom, and an eraser wheel attached to the shank.  Claims 1 and 4 protect Astro's pneumatic driver combined with an eraser wheel.  Claims 2, 3, 5, and 6 appear to relate to the eraser wheel component of the

---

[2]Pneumatic drivers are air driven, as opposed to electrically powered.

[3]The '914 Patent is attached to the Second Amended Complaint as Exhibit 4.

combination.  Claims 2 and 5 require that the "eraser member is made of rubber material."
Those claims, however, incorporate and are dependent on Claims 1 and 4, respectively.  Claim 3,
dependent on Claim 1, provides, "said erasing surface of said resilient eraser member is flat and
round."  Claim 6, dependent on Claim 4, provides the "resilient eraser member rotates at a speed
between 3000 rpm and 4000 rpm."

Irving Fisher (now deceased), Astro's founder and then President, filed the '914 Patent
application with a declaration stating that at the time of the filing, he was not aware of any
relevant prior art, and he did not perform a novelty search for the purpose of discovering any
such prior art.  Six months after filing the patent application, Irving Fisher died, and his son,
Stephen Fisher, took over as Astro's president, and directed the prosecution of the '914 Patent.[4]
(Prior Cert. Harold James,[5] Exh. C at 36.)

The Patent Examiner, M. Osele, rejected all thirty claims under 35 U.S.C. § 102(b), as
anticipated by an Astro advertisement.  The Patent Examiner concluded that the claimed device
had been "offered for sale more than one year prior to the application," and therefore was
unpatentable.  The Examiner also made reference to several devices existing in the prior art, but
did not rely on any of those devices in rejecting the '914 Patent application.

_____

[4]Although this Court discusses the prosecution of the patent history as having been
conducted by Irving Fisher and Stephen Fisher, it notes that Astro's patent attorney, Thomas
Rozsa, actually corresponded with the Patent Office. This Court, however, is aware that Irving
Fisher and Stephen Fisher provided the underlying information relevant to the prosecution and
were integral participants in the prosecution of the '914 Patent.

[5]"Prior Cert. Harold James" refers to the Certification of Harold James filed in support of
S&G's prior motion for summary judgment, addressed by this Court in In M. Eagles Tool
Warehouse, Inc. v. Fisher Tooling Co., Inc., 68 F. Supp.2d 494, 508 (D.N.J. 1999) ("M. Eagles
I") and M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc., 205 F. Supp.2d 306 (D.N.J.
2002) ("M. Eagles II").

In response, Stephen Fisher submitted a declaration to the Patent Office attesting that the advertisement could not have occurred until after or right around the time of the filing of the application. Based on that declaration and the accompanying sales receipt for the purchase of the advertisement, the Examiner withdrew his initial rejection and considered the claims of the application. The Examiner rejected Claims 1-3 and 7-30, but allowed Claims 4-6. These Claims were rejected as obvious in light of the prior art. The Examiner expressly noted that "Claims 4-6 are allowable because none of the art of record shows all of the detailed internal workings of the instant claims including the wave washer, the valve screw and 'O' rings, the valve stem and spring, the exhaust sleeve and 'O' ring, and the roll pins." (Prior Cert. Harold James, Exh. C at 42.)

Thereafter, Stephen Fisher voluntarily canceled Claims 10-15 and 25-30. He amended the various other claims to include those specific unique characteristics pointed out by the Examiner. In response, the Examiner issued a notice of allowance for Claims 1-6, and rejected the remaining claims on the basis of obviousness. Stephen Fisher ultimately canceled all claims that had not been allowed, and the '914 Patent issued in its current form.

After obtaining the '914 Patent, Astro marketed and sold its patented device both in combination, as a pneumatic driver with an eraser wheel, and as separate components. When the eraser wheel was sold individually, it was marked with a "patent pending" label,[6] and also with the '914 Patent number.

---

[6]Astro asserts that the "patent pending" label referred to the patent application that ultimately issued as United States Patent No. 5,624,990, which purportedly covers the wheel, and the process for making the wheel.

5

C.    **The Present Dispute and Procedural History**

    1.    *Pre-Litigation Conduct*

In or about October 1996, Astro charged S&G, in writing, with infringing the '914 Patent. Astro stated that it believed that "S&G's sales of rubber eraser pads in the United States are contributing to or inducing others to infringe the '914 Patent, in violation of 35 U.S.C. § 271(b) and (c)."  (Second Amended Compl., Ex. 5, October 8, 1996 Letter.)  Astro further indicated that it would not "hesitate to initiate litigation to enforce its rights and recover all applicable damages and costs."  (Id.)  Correspondence between the parties ensued, and S&G expressed its belief that its eraser pads (1) did not directly infringe the '914 Patent; (2) did not induce infringement of the '914 Patent; (3) did not contributorily infringe the '914 Patent; and (4) were staple articles of commerce capable of non-infringing use.  (See Second Amended Compl., Ex. 6.)

Astro initially chose not to sue S&G for infringement.  Instead, Astro began to alert the industry that anyone selling S&G's eraser wheels could be subject to liability for infringement of the '914 Patent.  Astro sent letters to S&G's customers stating that sales of S&G's eraser wheels infringe the '914 Patent.  (See Second Amended Compl., Ex. 7.)  Astro informed S&G's customers that use of S&G's eraser wheel "in a tool that is not made by [Astro] infringe[s] the patent."  (Id.)

The letters offered S&G's customers three options: (1) discontinue the sale of S&G erasers; (2) screen all customers and refuse to sell the S&G eraser wheel "to anyone that would use it with a tool not made by Astro;" or (3) continue infringing the '914 Patent.  (Id.)  If the last option were chosen, the letters stated that the customers could be subjected to a lawsuit; each letter indicated that it should be signed and returned to Astro within three weeks to "avoid

becoming involved in a lawsuit to stop infringement of our patent." (Id.)  After receiving the

letters, all companies that previously sold S&G's wheels allegedly stopped their sales of the

eraser wheels.

Astro maintains that the letters were dispatched based on its good faith belief in the

validity and enforceability of the '914 Patent, and based on its good faith belief that those entities

to whom the letters were dispatched were, and are, infringing the '914 Patent, either directly,

contributorily, or through inducement of infringement (Def.'s Facts, ¶¶ 1-2; Doane Decl., Exh. 2

(Fisher Decl.), ¶ 6.)  Astro further contends that S&G has no evidence demonstrating or

supporting any allegation that Astro acted in bad faith in dispatching the letters.  (Def.'s Facts, ¶

3; Doane Decl., Exh. 1 (Gering Depo.) at 99:12-101:6.)

### 2.    *The Complaint And Counterclaim*

S&G commenced this lawsuit against Astro on March 27, 1997.  S&G claims that Astro

engaged in unfair competition, tortious interference with contractual relations, tortious

interference with prospective economic advantage, false marketing, and violations of §43(a) of

the Lanham Act, 15 U.S.C. § 1125(a), and the New Jersey Fair Trade Act,  N.J. STAT. ANN. §

56:4-1.  S&G seeks (1) a declaratory judgment declaring that its sale of eraser pads does not

infringe the '914 Patent; (2) an injunction ordering Astro to cease its communications with

S&G's customers and requiring Astro to write to all S&G's customers retracting its charges of

infringement; and (3) damages for Astro's allegedly tortious conduct.

Astro counterclaims that S&G commits contributory infringement and induces

infringement of the '914 Patent through the sale of its eraser wheel.  Astro seeks an injunction

enjoining S&G from further contributory infringement of, or inducement to infringe, the '914

Patent, as well as damages based on S&G's allegedly tortious conduct.

### 3.      *This Court's Prior Rulings*

On November 18, 1998, S&G filed a motion for summary judgment based on invalidity and unenforcability of the '914 Patent, and in the alternative, noninfringement.  In <u>M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.</u>, 68 F. Supp.2d 494, 508 (D.N.J. 1999) ("<u>M. Eagles I</u>"), this Court denied S&G's motion for summary judgment of invalidity because S&G failed to satisfy its burden of establishing obviousness or lack of proper inventorship by clear and convincing evidence.  This Court found, however, that based on the evidence before it, Fisher and Astro engaged in inequitable conduct before the Patent and Trademark Office ("PTO"), rendering the '914 Patent unenforceable.   This Court stated that because Defendants had failed to inform the PTO of the existence of its Model 220 driver, it was reasonable to infer that Defendants acted intentionally to deceive the PTO.  <u>Id.</u> at 503-04.  This Court specifically observed that Defendants' failure to advise the PTO of the existence of the Model 220 driver constituted a failure to advise the PTO of relevant prior art.  <u>Id.</u> at 502.  This Court found that the '914 Patent was unenforceable, as a result, and dismissed as moot S&G's request for a declaratory judgment of noninfringement and Astro's counterclaims of contributory infringement and inducement to infringe.  <u>Id.</u> at 504.

This Court also granted S&G's motion for summary judgment motion as to its §43(a) Lanham Act claim.  <u>Id.</u> at 505-07.  In that claim, S&G alleges that by marking its eraser wheels as "patent pending" or covered under the '914 Patent, Astro deceived consumers in violation of the Lanham Act.  <u>Id.</u>  In granting judgment for S&G on its Lanham Act claim, this Court noted that Astro's motivation and intent did not affect the Court's analysis because "there is no

requirement under the Lanham Act that a false representation be made willfully or with intent to deceive.  A mistake is not a defense to an action under [the Lanham Act]."  Id. at 506 (alteration in original) (citations omitted).

This Court, however, denied S&G's motion for summary judgment as to its false marketing claim, pursuant to 35 U.S.C. § 292, concluding that S&G failed to demonstrate that there is no genuine issue as to a material fact concerning Astro's intent to deceive the consumer public.  Id. at 505.  This Court also denied S&G's motion for summary judgment on its claim for attorneys' fees, pursuant to 35 U.S.C. § 285, and its motion for sanctions, pursuant to FED. R. CIV. P. 11.   This Court found that S&G had submitted insufficient evidence to persuade that it was entitled to relief as a matter of law.  Id. at 507-508.

On March 20, 2001, Astro filed a new motion for summary judgment on the unfair competition and tortious interference claims in light of the Federal Circuit's holding in Zenith Electronics Corp. v. Exzec Inc., 182 F.3d 1340 (Fed. Cir. 1999).  Zenith held that a showing of bad faith is required to establish a Lanham Act violation.  S&G filed a cross-motion requesting that this Court grant summary judgment in its favor as to its Lanham Act, state unfair competition, and tortious interference claims, and award money damages, pursuant to 35 U.S.C. § 285.

On June 3, 2002, this Court issued an order and opinion reevaluating its prior holding in light of Zenith Electronics.  See M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc., 205 F. Supp.2d 306 (D.N.J. 2002) ("M. Eagles II").  This Court cited its previous findings of inequitable conduct as evidence of bad faith in Astro's subsequent contacts with S&G and its customers, and found that the record presented clear and convincing evidence that Astro acted in

9

bad faith such that S&G was entitled to summary judgment on its Lanham Act claim.  Id. at 317.

Pointing to the same evidence of inequitable conduct, this Court also granted summary judgment

for S&G on its state law unfair competition claims.  Id. at 322.

This Court also granted summary judgment for S&G on its tortious interference claim

based on its finding of inequitable conduct.  This Court found that Astro's conduct in sending out

letters regarding an unenforceable patent to S&G's customers and suppliers, in lieu of filing a

patent suit, fell outside "generally accepted standards of common morality," and therefore

constituted tortious interference with prospective economic advantage.  Id. at 320-22.

Additionally, although this Court had previously denied S&G's motion for summary

judgment on its attorneys' fees claim, it revisited its holding, and awarded fees in light of the

Federal Circuit's holding in Brasseler, U.S.A. 1, L.P. v. Stryker Sales Corp., 267 F.3d 1370 (Fed.

Cir. 2001).  This Court found that its finding of Astro's inequitable conduct before the PTO

constituted proof of exceptional circumstances allowing the award of fees.  M. Eagles II, F.

Supp.2d at 323.

Having found Lanham Act, state law unfair competition, and tortious interference

violations, this Court held a two-day hearing in 2004 to determine damages, which it awarded in

an Order dated December 30, 2004.  (Docket Entry No. 150.)

### 4.    *The Federal Circuit's Opinion*

Astro appealed this Court's findings, and on February 27, 2006, the Federal Circuit Court

of Appeals reversed in part and vacated in part this Court's prior rulings, and remanded the

action to this Court for further proceedings.  See M. Eagles Tool Warehouse, Inc. v. Fisher

Tooling Co., Inc., 439 F.3d 1335 (Fed. Cir. 2006) ("M. Eagles III").  The Federal Circuit found

that this Court "erred in its determination of inequitable conduct because there was insufficient evidence on summary judgment to infer an intent to deceive the PTO."  Id. at 1344.  In reaching its ultimate conclusion, the Federal Circuit specifically held that "a failure to disclose a prior art device in the PTO, where the only evidence of intent is a lack of a good faith explanation for the nondisclosure, cannot constitute clear and convincing evidence sufficient to support a determination of culpable conduct."  Id. at 1341.[7]  Based on its finding that there was insufficient evidence to support a finding of inequitable conduct at the summary judgment phase of the proceedings, the Federal Circuit vacated this Court's holdings regarding S&G's declaratory judgment, Lanham Act, state law unfair competition, tortious interference, and attorneys' fees claims.[8]

### 5.  *The Instant Motion*

On August 4, 2006, Defendant / Counterclaimant Astro moved this Court for summary judgment on all of S&G's claims, except for its non-infringement claim, and for summary

---

[7]At the hearing before the Federal Circuit, when prodded by the presiding judges, S&G's counsel failed to articulate or identify any affirmative evidence of Astro's culpable intent.  The following colloquy took place on the record:

| Circuit Judge: | [B]ut what is your best evidence of intent? . . . What is that, the best evidence you have? |
| Mr. James: | The fact that our, my adversary has not presented a single bit of evidence to show that the failure to disclose was inadvertent. |
| Circuit Judge: | Silence is evidence then? . . . You're saying silence is evidence? |
| Mr. James: | I'm saying that, yes.  Silence is evidence and that's the only evidence. |

(Transcript of Oral Argument at Federal Circuit, Dec. 6, 2005, Appeal Nos. 05-1224, 1228.)

[8]The Federal Circuit emphasized that its opinion did not address the issues of patent validity, infringement, and patent misuse.  M. Eagles III, 439 F.3d at 1344.

judgment on all of its affirmative defenses, except for its non-infringement defense.  Astro argues

that S&G's affirmative claims for damages against Astro, i.e., those premised on S&G's

contention that the '914 Patent is either unenforcable or invalid, must fail because there is no

genuine issue of fact regarding bad faith, obviousness, or inventorship – the grounds for

invalidity asserted by S&G.  Astro next argues that S&G's Lanham Act claim for damages must

fail because S&G has failed to establish a material issue of fact regarding (1) whether the alleged

misleading statements were made in commercial advertisements; (2) whether S&G suffered

actual damages, as opposed to a tendency to be damaged; or (3) whether S&G acted in bad faith

in notifying potential infringers.  Astro goes on to argue that all of S&G's state causes of action

are (1) preempted by federal law; (2) barred by the litigation privilege; and (3) unsupported by

evidence sufficient to create a genuine issue of material fact as to those claims.

Astro argues that S&G's affirmative defenses (except for its defense of non-infringement)

fail as a matter of law because (1) the defense of "abuse of process" is barred by New Jersey's

litigation privilege; and (2) S&G has adduced no evidence of patent misuse.

### III.  DISCUSSION

### A.     Legal Standard Governing Motions For Summary Judgment

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party

demonstrates that there is no genuine issue of material fact and the evidence establishes the

moving party's entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S.

317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for

the non-movant, and it is material if, under the substantive law, it would affect the outcome of

the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In considering a motion

for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"   Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir.1991)).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").  "A

13

nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." <u>Gleason v. Norwest Mortg., Inc.</u>, 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Katz v. Aetna Cas. & Sur. Co.</u>, 972 F.2d 53, 55 (3d Cir. 1992) (quoting <u>Celotex</u>, 477 U.S. at 322-23).

## B.     The '914 Patent's Validity

Astro argues that S&G's affirmative claims for damages against Astro, i.e., those premised on S&G's contention that the '914 Patent is either unenforcable or invalid, must fail because there is no genuine issue of fact regarding bad faith, obviousness, or inventorship – the grounds for invalidity asserted by S&G in its prior motion for summary judgment.  S&G counters that the validity issue is alive and ripe for adjudication at trial.  For the following reasons, this Court must grant Astro's motion for summary judgment of validity.[9]

---

[9]In <u>M. Eagles I</u>, 68 F. Supp.2d at 508, this Court denied S&G's motion for summary judgment of invalidity because S&G failed to satisfy its burden of establishing obviousness or lack of proper inventorship by clear and convincing evidence.  This Court's holding in <u>M. Eagles I</u>, however, addressed a different question than the one presented here.  In <u>M. Eagles I</u>, this Court found that S&G was not entitled to summary judgment on its contention that the '914 Patent is invalid because the evidence it had proffered did not clearly and convincingly establish that the '914 Patent is invalid.  Here, the issue is not whether S&G has established invalidity by clear and convincing evidence, but rather, whether S&G has adduced sufficient evidence to create a triable issue of fact as to invalidity.  As this Court will explain, no such evidence has been adduced by Plaintiffs.

1.      *Legal Standard Governing Determinations Of Patent Validity*

Initially, "[a] patent shall be presumed valid."  35 U.S.C. § 282.  "The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."  Id.  The presumption of patent validity "may be rebutted only by clear and convincing evidence."  Uniroyal, Inc. v. Rudkin-Wiley Corp., 837 F.2d 1044, 1050 (Fed.Cir.), cert. denied, 488 U.S. 825 (1988) (citations omitted).  Clear and convincing evidence is evidence that "could place in the ultimate factfinder an abiding conviction that the truth of [the] factual contentions are 'highly probable.'"  Colorado v. New Mexico, 467 U.S. 310, 316 (1984).[10]

2.      *Bad Faith / Inequitable Conduct*

Astro first argues that the Federal Circuit's opinion in  M. Eagles III, 439 F.3d 1335, which rejected this Court's findings of bad faith in granting S&G's motion for summary judgment, precludes S&G from now asserting bad faith as a ground for invalidating the '914 Patent.

a.      **Legal Standard Governing Inequitable Conduct**

"Patent applicants and those substantively involved in the preparation or prosecution of a patent application owe a 'duty of candor and good faith' to the PTO."  M. Eagles III, 439 F.3d at 1339 (citing 37 C.F.R. § 1.56(a) (2004); Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir. 1995)).  "A breach of this duty may constitute inequitable conduct, which can arise from a

---

[10]Corroboration of a witness' oral testimony is required to invalidate a patent under 35 U.S.C. § 102.  See Finnigan Corp. v. International Trade Comm'n, 180 F.3d 1354, 1367 (Fed. Cir. 1999).  This requirement exists regardless of whether the witness is an interested party or an uninterested party.  See id. at 1367-68.  Corroboration has been required by the courts "because of doubt that testimonial evidence alone in the special context of proving patent invalidity can meet the clear and convincing evidentiary standard to invalidate a patent."  Id. at 1368.

failure to disclose information material to patentability, coupled with an intent to deceive the PTO." Id. at 1339-40 (citing Molins, 48 F.3d at 1178).  Both intent and materiality must be established by clear and convincing evidence in order for a party to prevail on its challenge to the validity of a patent on such grounds.  Id. at 1340 (citing J.P. Stephens & Co., Inc. v. Lex Tex Ltd., Inc., 747 F.2d 1554, 1559 (Fed. Cir. 1984)).

"[M]ateriality does not presume intent, which is a separate and essential component of inequitable conduct." Id. (quoting Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544, 552 (Fed. Cir. 1990)).  "Intent to deceive can not be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." Id. (quoting Herbert v. Lisle Corp., 99 F.3d 1109, 1116 (Fed. Cir. 1996)).

"To satisfy the requirement of the intent to deceive element of inequitable conduct, 'the involved conduct, viewed in light of all the evidence, including evidence of good faith, must indicate sufficient culpability to require a finding of intent to deceive.'" Id. at 1341 (quoting Paragon Podiatry Lab. v. KLM Lab., 984 F.2d 1182, 1189 (Fed. Cir. 1993) (quoting Kingsdown Med. Consultants Ltd. v. Hollister, Inc., 863 F.2d 867, 876 (Fed. Cir. 1988))).  "Intent need not be proven by direct evidence." Id. (citing Merck & Co., Inc. v. Danbury Pharm. Inc., 873 F.2d 1418 (Fed. Cir. 1989)).  "Intent is generally inferred from the facts and circumstances surrounding the applicant's overall conduct, especially where there is no good faith explanation for a nondisclosure." Id. (citing Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd., 394 F.3d 1348, 1354 (Fed. Cir. 2005)).  "There still must be a factual basis, however, for a finding of intent." Id.; Hebert, 99 F.3d at 1116.

The Federal Circuit has articulated that, while it is not impermissible to grant summary

16

judgment on inequitable conduct grounds, it "urges caution" "in making an inequitable conduct determination at the summary judgment stage." Id. at 1340 (quoting Paragon Podiatry Lab, 984 F.2d at 1190).

### b.    Sufficiency Of Evidence Of Inequitable Conduct

S&G first argues that the evidence it proffered with its prior motion for summary judgment creates a triable issue of fact regarding the intent to deceive element of inequitable conduct.  This Court finds, however, that the evidence in the record before it and the Federal Circuit on S&G's motion for summary judgment, is not sufficient to lead a reasonable factfinder to conclude that S&G has established Astro's intent to deceive the PTO by clear and convincing evidence.

As the Federal Circuit found, "[i]n light of all the facts and circumstances surrounding the applicant's conduct, . . . Astro's acts do not demonstrate on summary judgment that Astro had a culpable intent during prosecution." M. Eagles III, 439 F.3d at 1343.   The Federal Circuit, addressing S&G's prior motion for summary judgment of invalidity, labeled what S&G had proffered a "dearth of evidence as to the element of intent in light of the clear and convincing evidence standard." Id.  Given the dearth, i.e., the paucity or shortage, of evidence S&G adduced concerning Astro's intent to deceive in its prior motion for summary judgment, and S&G's failure to present any additional evidence in opposition to Astro's pending motion, this Court cannot find that the evidence before it is sufficient to allow S&G's claim for invalidity to survive Astro's motion for summary judgment.

When prodded by the Federal Circuit during Astro's appeal of this Court's prior order on S&G's motion for summary judgment, the only "evidence" S&G could identify as probative of

Astro's culpable intent was "silence," i.e., Astro's failure to come forth with a good faith explanation of its failure to disclose prior art to the PTO examiner.  (See Transcript of Oral Argument at Federal Circuit, Dec. 6, 2005, Appeal Nos. 05-1224, 1228.)  Similarly, when before this Court at the hearing on the instant motion brought by Astro seeking summary judgment on the issue of validity, S&G's counsel came forward with no evidence of Astro's culpable intent other than Astro's nondisclosure of prior art to the PTO.  (Transcript of Proceedings, Jan. 30, 2007 at 12) (S&G's counsel stated, "it's still nondisclosure").)  As the Federal Circuit clearly held, "[a] failure to disclose a prior art device in the PTO, where the only evidence of intent is a lack of a good faith explanation for the nondisclosure, cannot constitute clear and convincing evidence sufficient to support a determination of culpable conduct."  M. Eagles III, 439 F.3d at 1341.[11]  Thus, by failing to submit evidence of mal intent beyond Astro's non-disclosure of prior art, S&G has failed to meet its burden on summary judgment concerning its invalidity claim.

---

[11]During oral argument, counsel for S&G argued that the Federal Circuit's holding was limited to a rejection of S&G's evidence of culpable intent in failing to disclose prior art related to the Model 220 product.  This Court rejects such a narrow interpretation of the Federal Circuit's opinion.  All of the evidence, which was before this Court in deciding S&G's prior motion, was similarly before the Federal Circuit.  The Federal Circuit decided, based on "all of the facts and circumstances surrounding the applicant's conduct," that there was insufficient evidence in the record from which a reasonable factfinder could conclude, under the clear and convincing evidence standard, that Astro acted in bad faith.  M. Eagles III, 439 F.3d at 1343.  The Federal Circuit, while specifically rejecting this Court's finding of culpable intent in failing to disclose certain prior art references concerning the Model 220, also made its finding in light of the "dearth of evidence as to the element of intent," generally.  Id.  The clear language of the Federal Circuit's opinion indicates that its holding rejected the notion that "silence," i.e., nondisclosure, is sufficient evidence of bad faith to justify a finding of inequitable conduct.  This holding is not limited to "silence" regarding the Model 220, but also addresses the lack of any evidence in the record demonstrating culpable intent, while setting forth a generally applicable rule of law.  Thus, S&G's argument that the Federal Circuit's opinion does not control this Court's decision must fail.  The Federal Circuit not only controls this court in the area of patent law generally, but its decisions in this matter form the law of the case, and cannot be set aside or ignored by this Court, as this action moves forward towards trial and final adjudication.

This Court therefore must grant Astro's motion for summary judgment based on validity.

S&G also argues that, whatever the import of the Federal Circuit's holding, S&G is entitled to an opportunity to present a complete record at trial, and conduct additional discovery to support its argument that Astro engaged in inequitable conduct in its relations with the PTO. (Pl.'s Opp. at 13-14.)  S&G contends that discovery has been held in abeyance pending this Court's determination of the merits of Astro's pending motion, and that after this Court has ruled, S&G will take discovery in hopes of establishing: (1) "the dollar value of Astro's sales of the relevant prior art drivers"; (2) "the close relationship of Mr. Irving Fisher to the selection and construction of prior art Astro models"; and (3) "the fact that Astro's personnel, including Mr. Fisher, were at the relevant times thoroughly familiar with the driver parts, including the 'critical elements.'" (Id at 13.)  S&G claims these facts without evidentiary support, and argues that they are relevant to a determination of Astro's intent because such facts demonstrate that Astro was knowledgeable of the prior art models and their parts and failed to disclose them to the PTO.

This Court finds unavailing S&G's arguments regarding the evidence they will seek to introduce at trial concerning the '914 Patent's purported invalidity due to inequitable conduct. S&G is deplorably confused about its burden at this stage of the litigation, where discovery has been closed for a number of years.  (See Docket No. 87 (ordering fact and expert discovery closed on August 31, 2000).)  As this Court has explained, "with respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.  Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine

issue as to a material fact exists.  Jersey Cent. Power & Light Co., 772 F.2d at 1109.  The party

opposing the motion for summary judgment cannot rest on mere allegations and instead must

present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477

U.S. at 248; Siegel Transfer, 54 F.3d at 1130-31.  "[U]nsupported allegations . . . and pleadings

are insufficient to repel summary judgment."  Schoch, 912 F.2d at 657 (3d Cir. 1990); see also

FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is

a genuine issue for trial").

Because S&G bears the burden of establishing that the '914 Patent is invalid for

inequitable conduct, M. Eagles III, 439 F.3d at 1340, once Astro points to an absence of evidence

demonstrating inequitable conduct, as it has done here, S&G must come forth with *actual*

evidence demonstrating a triable issue of fact regarding inequitable conduct.  See Anderson, 477

U.S. at 248.  By claiming that it will present such evidence at trial, S&G does not meet its

burden.  The opportunity to gather evidence is long gone.

Because S&G has proffered insufficient evidence from which a reasonable factfinder

could determine that S&G has established by clear and convincing evidence that Astro engaged

in inequitable conduct before the PTO, thereby rendering the '914 Patent invalid, Astro's motion

for summary judgment on S&G's claim for invalidity on inequitable conduct grounds is granted.

### 3.    *Obviousness*

Astro next contends that S&G has failed to proffer sufficient evidence demonstrating that

the '914 Patent fails for obviousness.

### a.    Legal Standard Governing Obviousness

A patent is invalid under 35 U.S.C. § 103(a) where: "the differences between the subject

matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  The question of obviousness, therefore, turns on four factual inquiries: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) any objective indicators of non-obviousness, more commonly termed secondary considerations.  See Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966); B.F. Goodrich Co. v. Aircraft Braking Sys. Corp., 72 F.3d 1577, 1582 (Fed. Cir. 1996); Uniroyal, 837 F.2d at 1050.

The existence of each limitation of a claim in the prior art does not, by itself, demonstrate obviousness.  Instead, there must be a "reason, suggestion, or motivation in the prior art that would lead one of ordinary skill in the art to combine the references, and that would also suggest a reasonable likelihood of success."  Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc., 183 F.3d 1347, 1356 (Fed. Cir. 1999); see also Eli Lilly and Co. v. Zenith Goldline Pharmaceuticals, Inc., – F.3d –, 2006 WL 3792689, at *7 (Fed. Cir. Dec. 26, 2006).  "Such a suggestion or motivation may come from the references themselves, from knowledge by those skilled in the art that certain references are of special interest in a field, or even from the nature of the problem to be solved."  Id. at 1356.

To rebut a prima facie case of obviousness based on prior art, objective evidence of nonobviousness may be used.  Tec Air, Inc. v. Denso Mfg. Mich., Inc., 192 F.3d 1353, 1360 (Fed. Cir. 1999). This objective evidence includes: (1) a long-felt and unmet need in the art for the invention; (2) failure of others to achieve the results of the invention; (3) commercial success of the invention; (4) copying of the invention by others in the field; (5) whether the invention was

21

contrary to accepted wisdom of the prior art; (6) expression of disbelief or skepticism by those skilled in the art upon learning of the invention; (7) unexpected results; (8) praise for the invention by those in the field; and (9) independent invention by others.  See Graham, 383 U.S. at 17-19.  "The objective evidence of nonobviousness . . . should when present always be considered as an integral part of the analysis."  Demaco Corp. v. F. Von Langsdorff Licensing Ltd., 851 F.2d 1387, 1393 (Fed. Cir. 1988) (quoting W.L. Gore & Assocs. Inc. v. Garlock, Inc., 721 F.2d 1540, 1555 (Fed. Cir. 1983), cert. denied, 469 U.S. 851 (1984)).

"Because patents are presumed to be valid[,] an alleged infringer seeking to invalidate a patent on obviousness grounds must establish its obviousness by facts supported by clear and convincing evidence."  Kao Corp. v. Unilever U.S., Inc.  441 F.3d 963, 968 (Fed. Cir. 2006) (internal citation omitted) (citing Apotex USA, Inc. v. Merck & Co., 254 F.3d 1031, 1036 (Fed. Cir. 2001)).

**b.    Whether There Is Sufficient Evidence Of Obviousness**

In its prior motion for summary judgment, S&G argued that the '914 Patent is invalid for obviousness.  This Court, in its opinion in M. Eagles I, denied S&G's motion for summary judgment of invalidity on obviousness grounds, finding that genuine issues of material fact remained regarding obviousness.  See M. Eagles I, 68 F. Supp.2d at 500.  Astro now argues that subsequent developments have foreclosed S&G' ability to argue obviousness.

S&G's claim of invalidity for obviousness is based on its contention that the driver claimed in the '914 Patent is the same as the Astro Model 220, which was in existence for over twenty years before Astro applied for the '914 Patent.  Astro argues that the Federal Circuit's recent decision prevents S&G from making this argument.  The Federal Circuit rejected S&G's

argument that the '914 Patent is the same as the Model 220.  Comparing the claims of the '914 Patent to the features of the Model 220, the Federal Circuit found that "the Model 220 lacks all of the components in paragraphs (d), (f), (g) and (h) of claim 1 of the '914 Patent and many of the components in paragraph (e)."  M Eagles III, 439 F.3d at 1342 n.4.

In response, S&G does not specifically identify evidence supporting its obviousness contention.  Rather, S&G spends the majority of its opposition brief drawing the court's attention to copious unorganized evidence, which references the prior art.  S&G, however, fails to explain how this evidence supports its claim of obviousness, let alone creates a triable issue of fact such that a reasonable jury could conclude that S&G has established obviousness by clear and convincing evidence.

As the Federal Circuit has found, in challenging a patent as invalid for obviousness, "it is insufficient to merely identify each element in the prior art to establish unpatentability of the combined subject matter as a whole"; instead, "a party alleging invalidity due to obviousness must articulate the reasons one of ordinary skill in the art would have been motivated to select the references and to combine them to render the claimed invention obvious."  Sanofi-Synthelabo v. Apotex, Inc., 470 F.3d 1368, 1379 (Fed. Cir. 2006) (quoting Abbott Labs. v. Andrx Pharm., Inc., 452 F.3d 1331, 1336 (Fed. Cir. 2006)).  By neglecting to articulate clearly how the prior art renders that '914 Patent obvious, S&G has failed to meet its burden on summary judgment.  This Court, therefore, must grant summary judgment for Astro on S&G's invalidity claim, to the extent it is rooted in S&G's contention of obviousness.[12]

_____

[12]This Court notes that in addition to oblique references to unorganized prior art evidence, S&G has also submitted various reports by its purported expert, Melvin Lindner.  Mr. Lindner's report, dated July 2000, and his supplemental affidavit, dated January 2001, are not probative as

23

to obviousness in any respect.  (James Decl., Exh. 8.)  FED. R. EVID. 702 only permits the introduction and consideration of expert evidence that is helpful to the trier of fact, i.e., if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," it is admissible.  Id.  Without deciding whether Mr. Lindner is qualified as an expert, this Court finds that neither his 2000 report, nor his 2001 affidavit, render an "opinion" or present any evidence demonstrating that the '914 Patent was obvious.  Mr. Lindner's 2000 and 2001 submissions merely reiterate the findings of the PTO examiner, explained in the facts section of this opinion.  His 2000 and 2001 submissions, therefore, are not helpful to the trier of fact, and must be excluded from evidence.  FED. R. EVID. 702.

In addition to the 2000 and 2001 submissions by Mr. Lindner, S&G has also (1) proffered a supplemental affidavit by Mr. Lindner, dated July 2006 (James Decl., Exh. 7); and (2) moved this court for leave to supplement Mr. Lindner's 2000 and 2001 submissions (Docket Entry No. 199).  S&G's motion to supplement Mr. Lindner's report was filed after all briefing on Astro's motion for summary judgment had been completed, and after oral argument had been held.  Astro has moved to strike the 2006 supplemental affidavit by Mr. Lindner, and has also opposed S&G's motion to supplement Mr. Lindner's earlier report and affidavit.

Rule 26(a)(2)(A) requires that "a party . . . disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence."  FED. R. CIV. P. 26(a)(2)(A).  Rule 26(a)(2)(B) provides:

> Except as otherwise stipulated or directed by the court, this disclosure  shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness.  The *report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years*; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

FED. R. CIV. P. 26(a)(2)(B) (emphasis added).  Rule 26(e) imposes a continuing duty on litigants to supplement their disclosures under Rule 26(a).  FED. R. CIV. P. 26(e)(1).

Rule 37 provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."  FED. R. CIV. P. 37(c)(1); see also Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div., 60 F.3d 153, 156 (3d Cir. 1995) ("Rule 37 is written in mandatory terms, and is designed to provide a strong inducement for disclosure of Rule 26(a) material") (quotations and citation omitted); Yeti by Molly v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be

### 4.   *Inventorship*

Astro next claims that S&G's contention that the '914 Patent is invalid under 35 U.S.C. §

102(f), for not naming the true inventor, is not supported by sufficient evidence.

---

disclosed by Rule 26(a) that is not properly disclosed. . . .  This particular subsection, implemented in the 1993 amendments to the Rules, is a recognized broadening of the sanctioning power. . . .  The Advisory Committee Notes describe it as a 'self-executing,' 'automatic' sanction to 'provide[ ] a strong inducement for disclosure of material. . . .'  Courts have upheld the sanction even when a litigant's entire cause of action or defense has been precluded. . .").

"Two express exceptions ameliorate the harshness of Rule 37(c)(1): The information may be introduced if the parties' failure to disclose the required information is substantially justified or harmless."  Yeti by Molly, 259 F.3d at 1106; see also Brooks v. Price, 121 Fed. Appx. 961, 965 (3d Cir. Feb. 14, 2005) ("Although Rule 37 'is designed to provide a strong inducement for disclosure of Rule 26(a) material,' it still leaves the trial court with discretion to determine if a party provides substantial justification for their delay or if the delay is harmless") (quoting Newman, 60 F.3d at 156).  The burden of establishing substantial justification and harmlessness is on the party that failed to make the required disclosure.  Yeti by Molly, 259 F.3d at 1107. Accord Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co., 310 F.3d 592, 596 (4th Cir. 2003) (the burden is on the party facing sanction to prove harmlessness); Wilson v. Bradlees of New England, Inc., 250 F.3d 10, 21 (1st Cir. 2001) (same); Finely v. Marathon Oil Co., 75 F.3d 1225, 1230 (7th Cir. 1996) (same).  "The imposition of sanctions for abuse of discovery under FED. R. CIV. P. 37 is a matter within the discretion of the trial court."  Newman, 60 F.3d at 156 (quoting Orjias v. Stevenson, 31 F.3d 995, 1005 (10th Cir. 1994)); see also Mid-America Table Wares, Inc. v. Mogi Trading Co., Ltd., 100 F.3d 1353, 1361 (7th Cir. 1996) ("The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court").

S&G's extremely belated presentation of a new submission by Mr. Lindner is unjustified and unduly harmful to Astro.  S&G has not proffered any acceptable justification for submitting a new "expert report" close to five-and-a-half years after the close of expert discovery on August 31, 2000, or moving to supplement Mr. Lindner's earlier submissions after the close of all briefing and after oral argument on the instant motion.  Moreover, there is every indication that S&G's untimely disclosure and attempt to supplement Mr. Lindner's prior submissions is unfairly prejudicial to Astro, which has had no opportunity to review the supplemental submissions, depose Mr. Lindner about the supplemental submissions, or prepare any rebuttal evidence of their own.  For all these reasons, this Court grants Astro's motion to strike the 2006 supplemental affidavit by Mr. Lindner, and denies S&G's motion to supplement Mr. Lindner's earlier report and affidavit.

### a.    Legal Standard Governing Inventorship

"A person shall [not] be entitled to a patent [where] he did not himself invent the subject matter sought to be patented." 35 U.S.C. § 102(f).  Moreover, "[a] patent is invalid if more or fewer than the true inventors are named."  <u>Gemstar-TV Guide Intern., Inc. v. International Trade Com'n</u>, 383 F.3d 1352, 1381 (Fed. Cir. 2004).  "Because a patent is presumed valid under 35 U.S.C. § 282, there follows a presumption that the named inventors on a patent are the true and only inventors."  <u>Id.</u> (citing <u>Hess v. Advanced Cardiovascular Sys., Inc.</u>, 106 F.3d 976, 980 (Fed. Cir. 1997).

"Conception is the touchstone of inventorship."  <u>Borroughs Wellcome Co. v. Barr Labs, Inc.</u>, 40 F.3d 1223, 1227 (Fed. Cir. 1994).  As a result, each joint inventor, to the extent that there is more than one inventor, "must generally contribute to the conception of the invention."  <u>Stern v. Trustees of Columbia University in City of New York</u>, 434 F.3d 1375, 1378 (Fed. Cir. 2006); <u>Burroughs Wellcome</u>, 40 F.3d at 1227-28 (Fed. Cir. 1994).  "Additionally, courts require corroborating evidence of conception."  <u>Stern</u>, 434 F.3d at 1378 (citing <u>Borroughs Wellcome</u>, 40 F.3d at 1228).  "However, contribution to one claim is sufficient to be a co-inventor."  <u>Stern</u>, 434 F.3d at 1378 (citing <u>Ethicon, Inc. v. U.S. Surgical Corp.</u>, 135 F.3d 1456, 1460 (Fed. Cir. 1998)).

Conception has been defined by the Federal Circuit as "formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice."  <u>Hybritech Inc. v. Monoclonal Antibodies, Inc.</u>, 802 F.2d 1367, 1376 (Fed. Cir. 1986) (citation omitted).  "Conception is complete when 'the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation.'"  <u>Stern</u>, 434 F.3d at 1378

26

(quoting Borroughs Wellcome, 40 F.3d at 1228).

The critical question on summary judgment is whether S&G can show by clear and convincing evidence, after all reasonable inferences are drawn in their favor, that the named inventor did in fact invent the '914 Patent.  See Stern, 434 F.3d at 1377.[13]  To meet this heightened threshold, S&G must present more than uncorroborated testimony.  See Stern, 434 F.3d 1378; Medichem, S.A. v. Rolabo, S.L., 437 F .3d 1157, 1170 (Fed. Cir. 2006) ("the corroboration requirement provides an additional safeguard against courts being deceived by inventors who may be tempted to mischaracterize the events of the past through their testimony").  The sufficiency of corroborating evidence turns on evaluation of all pertinent evidence so that a sound determination of the credibility of the plaintiff's story may be reached. See Trovan, Ltd. v. Sokymat SA, Irori, 299 F.3d 1292, 1302 (Fed. Cir. 2002).  Corroborating evidence "preferably comes in the form of physical records that were made contemporaneously with the alleged prior invention," but may also consist of circumstantial evidence about the inventive process or reliable testimony from someone other than the plaintiff.  Id. at 1302-03; Checkpoint Systems, Inc. v. All-Tag Sec. S.A., 412 F.3d 1331, 1339 (Fed. Cir. 2005) (corroborating evidence may include physical, documentary or circumstantial evidence, or reliable testimony from one other than an interested party).  The sufficiency of corroborating evidence is evaluated on a "rule of reason" basis, and is a question of fact.  Medichem, 437 F.3d at 1170-71.

---

[13]The rationale for this heightened standard is that, in the inventorship context, "the temptation for even honest witnesses to reconstruct, in a manner favorable to their own position, what their state of mind may have been years earlier, is simply too great to permit a lower standard." Hess v. Advanced Cardiovascular Systems, Inc., 106 F.3d 976, 980 (Fed. Cir. 1997).

**b.      Whether There Is Sufficient Evidence To Challenge**

**Inventorship**

Astro argues that the sole basis of S&G's claim of invalidity for failure to name the

correct inventor is S&G's argument that a Japanese company, rather than Irving Fisher (the

inventor named in the '914 Patent) was the true inventor.  The only evidence S&G has offered in

support of its inventorship argument is the deposition testimony of Stephen Fisher, who played

no role in the conception and initial execution of the '914 Patent**.**  Stephen Fisher testified as

follows:

> Q.  Sir, from your knowledge of your father's experience and activities,
> what connection did he have in devising the internal – the detailed internal
> workings of the pneumatic driver, including the valve screw and O rings, the
> valve stem and spring, the exhaust sleeve and O ring, the wave washers and the
> various roll pins?
>             * * *
> A.  That's something that was in the hands of the Japanese or a Taiwanese
> company; correct?

(See James Decl., Exh. 11, Fisher Depo. at 111-112.)

Astro argues that this evidence is insufficient to create a triable issue of fact regarding

inventorship, and this Court agrees.  First, there is no evidence in the record indicating that

Stephen Fisher had personal knowledge of his father's involvement in the creation of the

patented product, such that his testimony is competent.  FED. R. EVID. 602 ("A witness may not

testify to a matter unless evidence is introduced sufficient to support a finding that the witness

has personal knowledge of the matter").  Moreover, as this Court has explained, uncorroborated

testimony, without more, is insufficient to create a triable issue of fact as to inventorship.  Stern,

434 F.3d at 1378; Medichem, 437 F .3d at 1170.

At best, the colloquy transcribed above is equivocal.  Stephen Fisher seems to be asking

the examiner whether his response to the examiner's question is correct.  He does not appear to be giving a definitive answer to the question posed.  Stephen Fisher's statement, therefore, is far from definitive evidence of lack of inventorship.  For these reasons, this Court must grant summary judgment for Astro on S&G's claim for invalidity, to the extent S&G's claim is made on inventorship grounds.

### C.    Lanham Act Claim

Astro also moves for summary judgment on S&G's Lanham Act claim on the ground that S&G cannot establish the commercial advertising, injury, or bad faith elements of its claim.

#### 1.    *Legal Standard Governing Lanham Act Claims*

The Lanham Act provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to origin, sponsorship, or approval of his or her goods, services or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

To establish a violation of the Lanham Act, S&G must show that "(1) the defendant made false or misleading statements about the plaintiff's product [in commercial advertising or promotion]; (2) there is actual deception or a tendency to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood

of injury to the plaintiff, e.g., declining sales and loss of good will." Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 171 (3d Cir. 2001).

Generally, "there is no requirement that the falsification occur wilfully and with intent to deceive." U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 922 (3d Cir. 1990) (quoting Parkway Baking Co. v. Freihofer Baking Co., 255 F.2d 641, 648 (3d Cir. 1958)). Where the Lanham Act (or a state law unfair competition claim) arises from a patentee's marketplace activity in support of its patent, the patentee's statements need to be made in bad faith for there to be a Lanham Act or state law unfair competition claim. See Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d 1340, 1353 (Fed. Cir. 1999) (stating that "before a patentee may be held liable under § 43(a) for marketplace activity in support of its patent, and thus be deprived of the right to make statements about potential infringement of its patent, the marketplace activity must have been in bad faith"); see also id. at 1355 (stating that bad faith is a requirement for state law tort claims or else the state law claim will be preempted by patent law). Therefore, S&G must show that Astro acted in bad faith to survive Astro's motion for summary judgment on its Lanham Act claim.

"Each of the above listed elements are essential to the claim and summary judgment is appropriate 'if there is no material issue of fact as to any one of the elements.'" Synygy, Inc. v. Scott-Levin, Inc., 51 F. Supp.2d 570, 575 (E.D. Pa. 1999), aff'd, 229 F.3d 1139 (3d Cir. 2000).

## 2.    Commercial Advertisements

To prevail on its claim under § 1125(a), S&G must establish that Astro's challenged statements were made in the context of "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). "Notwithstanding that § 1125(a) applies to a broad range of misrepresentations,

30

'it does not have boundless application . . . but is limited to false advertising as that term is generally understood.'" Guardian Life Ins. Co. of America v. American Guardian Life Assur. Co., No. CIV. A. 95-3997, 1995 WL 723186, at *3 (E.D. Pa. Nov. 14, 1995) (quoting Gordon & Breach Science Publishers v. AIP, 859 F. Supp. 1521, 1532 (S.D.N.Y. 1994) (quoting Alfred Dunhill Ltd. v. Interstate Cigar Co., 499 F.2d 232, 236 (2d Cir. 1974))). See also Ditri v. Coldwell Banker, 954 F.2d 869, 872 (3d Cir. 1992) (noting that the Lanham Act creates a remedy only for false descriptions or representations of products in advertising); U.S. Healthcare, 898 F.2d at 922 (noting that recovery under § 1125 requires a plaintiff to show that the falsification or misrepresentation "deceives a portion of the buying public").

Courts have adopted the following four part test to determine whether a representation constitutes commercial advertising. The contested representation must be: "'(1) commercial speech; (2) by a defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing customers to buy defendants' goods or services'; and, (4) although representations less formal than those made as a part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public." Fashion Boutique of Short Hills, Inc., v. Fendi USA, Inc., 314 F.3d 48, 56 (2d Cir. 2002); Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp., 441 F. Supp.2d 695, 706 n.4 (M.D. Pa. 2006).

Astro argues that S&G fails to establish the "commercial advertising" element of its Lanham Act claim because the infringement notices of which it complains are not commercial advertising, i.e., they were not designed to influence customers to purchase Astro's goods instead of S&G's products. S&G does not argue that the notices constitute "commercial advertising." Rather, it argues that Astro's argument regarding the "commercial advertising" prong of the

Lanham Act dissolves in light of the Federal Circuit's holding in Zenith, 183 F.2d 340.  S&G contends that the Zenith court held that bad faith notices of infringement give rise to liability under the Lanham Act, as well as under state unfair competition law.

S&G has misread Zenith.  The Zenith court did not find that bad faith notices of infringement necessarily give rise to liability under the Lanham Act.  Instead, the court found that statements regarding non-infringement, "if made in bad faith, can be reached by § 43(a) *(assuming the elements of such a claim are otherwise made out)*."  Zenith, 182 F.3d at 1354 (emphasis added).  This holding was made in the context of finding that Lanham Act claims based on bad faith notices of infringement do not conflict with patent or antitrust laws.  See Id. The Zenith court did not find that statements regarding non-infringement give rise to Lanham Act claims where those statements are not made in the context of commercial advertising and promotion.  In fact, the Zenith court specifically noted that such statements would only give rise to liability if "the elements of such a claim are otherwise made out."  Thus, contrary to S&G's argument, S&G is required to proffer evidence establishing that the challenged statements were made in the context of "commercial advertising or promotion" in order for its Lanham Act claim to survive Astro's motion for summary judgment.

As Astro correctly points out, the infringement notices/letters, upon which S&G's Lanham Act claim is based, do not constitute "commercial advertising."  See ISI Intern., Inc. v. Borden Ladner Gervais LLP, 316 F.3d 731, 733 (7th Cir. 2003) (finding that plaintiff's Lanham Act claim failed on the merits because letters sent to customers misleadingly asserting that the plaintiff lacks any right to license the subject invention and falsely asserting that defendant's client himself had a patent did not come within the scope of § 43(a)(1)(B), which is limited to

32

false or misleading "commerical advertising or promotion," and does not cover all deceitful practices); <u>Conditioned Ocular Enhancement, Inc. v. Bonaventura</u>, – F. Supp.2d – , 2006 WL 2982140 (N.D. Ill. Oct. 17, 2006) (Cease and desist letters patent holder sent to alleged infringer's current and prospective customers were not "commercial advertising or promotion" within scope of Lanham Act's false or deceptive advertising provision).  Thus, even if all the facts are viewed in the light most favorable to S&G, its Lanham Act claim fails as a matter of law.  Astro's motion for summary judgment on S&G's Lanham Act claim is granted.[14]

### D.    **State Law Claims**

Intermixed with its federal patent-related claims, S&G has also asserted three state causes of action: unfair competition; violation of the New Jersey Fair Trade Act; and tortious interference with prospective economic advantage.  Astro contends that these state law claims must fail because (1) S&G lacks sufficient evidence to support these claims; (2) they are preempted by federal patent law; and (3) they are barred by the litigation privilege.

### 1.    *Sufficiency Of Evidence To Support Plaintiff's State Law Claims*

Astro argues that S&G's state law claims fail as a matter of law because S&G cannot adduce sufficient evidence in support of the essential elements of its claims.

### a.    **Common Law & Statutory Unfair Competition Claim**s

S&G's common law unfair competition claim is essentially the same as its Lanham Act

---

[14]Because this Court has found that S&G's Lanham Act claim fails as a matter of law for failure to satisfy "commercial advertising or promotion" requirement of the statute, this Court need not address Astro's arguments that S&G has failed to proffer sufficient evidence of actual damages or bad faith that might have resulted from proof of such a claim.

claim.[15]  See SK&F Co. v. Premo Pharmaceutical Laboratories, Inc., 625 F.2d 1055, 1065 (3d

Cir. 1980) ("The federal law of unfair competition is not significantly different . . . from that of

New Jersey");  Birthright v. Birthright, Inc., 827 F. Supp. 1114, 1141 (D.N.J. 1993) ("It is well

established that the test for a common law unfair competition claim under New Jersey law is

essentially the same as under the federal Lanham Act").  Similarly, the New Jersey Fair Trade

Act mimics the Lanham Act.  Eli Lilly and Company v. Roussel Corp., 23 F. Supp.2d 460, 495

(D.N.J. 1998) ("N.J. STAT. ANN.. § 56:4-1 is the statutory equivalent of § 43(a) of the Lanham

Act and the two can be treated alike for analytical purposes") (internal quotations omitted) (citing

Ciba-Geigy Corp. v. Bolar Pharmaceutical Co., Inc., 747 F.2d 844, 854 (3d Cir. 1984) and

Warner Lambert Co. v. McCrory's Corp., 718 F. Supp. 389, 396 (D.N.J. 1989)).  For the same

reasons that this Court grants Astro summary judgment on S&G's its Lanham Act claims, it also

grants Astro summary judgment on S&G's state law unfair competition claims.  Id.  ("For the

same reasons defendants violated Section 43(a)(1)(A) of the Lanham Act, defendants are also

guilty of common law unfair competition."); see also SK&F, 625 F.2d at 1065 ("Since, except

for the interstate commerce requirement, the elements of the unfair competition torts proscribed

by New Jersey law and by section 43(a) of the Lanham Act are the same, we need not repeat the

factual discussion as to likelihood of success on the merits of the federal cause of action.").

---

[15]The parties' briefs only minimally distinguish the elements of New Jersey's common law unfair competition claim, and those required by N.J. STAT. ANN.. § 56:4-1.  This Court's review of the relevant case law shows a disagreement as to whether the two causes of action are identical.  See Duffy v. Charles Schwab & Co., Inc., 97 F. Supp.2d 592, 600 n. 7 (D.N.J. 2000). Although this Court disposes of the two claims similarly, it makes no determination as to whether and how they are distinguishable. Id.

**b.**      **Tortious Interference With Economic Advantage Claim**

To establish a claim for tortious interference with economic advantage, S&G must prove

that: (1) it had "some protectable right," or "reasonable expectation of economic advantage;" (2)

"the interference was done intentionally . . . without justification or excuse" (i.e., with malice);

(3) "the interference caused the loss of the prospective gain;" and (4) "the injury caused the

damage." Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 751 (1989).

Astro argues that S&G cannot adduce sufficient evidence to establish the malice element

of its intentional interference claim.  As this Court has found, S&G has failed to proffer sufficient

evidence demonstrating that Astro had an intent to deceive the PTO in prosecuting the '914

Patent.  No additional evidence has been proffered in support of S&G's tortious interference

claim, separate and apart from the evidence adduced in support of S&G's claim for invalidity.  It

follows, therefore, that because there is insufficient evidence indicating that Astro knew about

the alleged deficiencies in the '914 Patent when it sought to prosecute it, there is also insufficient

evidence demonstrating that it knew the '914 Patent was unenforceable (at least according to

S&G) when it sent out the infringement notices / letters.  This Court, therefore, cannot find that

S&G has proffered sufficient evidence from which a reasonable factfinder could conclude that

S&G acted maliciously.  Astro's motion for summary judgment on S&G's tortious interference

claim is granted.[16]

**E.**      **Affirmative Defenses**

Astro also argues that it should be granted summary judgment on S&G's asserted

---

[16]The ruling in Astro's favor on S&G's state tort claims precludes the necessity of
addressing the additional grounds for summary judgment on those claims asserted by Astro - i.e.,
preemption and the New Jersey litigation privilege.

defenses of abuse of process and patent misuse.

       1.     *"Abuse Of Process"*

      In its fourth affirmative defense, S&G claims that Astro's counterclaims against S&G's customers "abused the legal process and has violated Fed. R. Civ. P. 11(b)." (Amended Reply to the Counterclaim at 8.) Astro argues that it must be granted summary judgment on S&G's abuse of process affirmative defense because (1) it is barred by New Jersey's litigation privilege; and (2) S&G cannot establish the "further acts" necessary to establish abuse of process under New Jersey Law. S&G responds briefly to Astro's motion for summary judgment on its abuse of process affirmative defense by arguing that the defense cannot be preempted in light of <u>Zenith</u>, and that the defense is predicated on Fed. R. Civ. P. 11, which, according to S&G, "cannot be trumped by any so-called state privilege and is based upon Astro's act of litigation misconduct specified in the Certification of Harold James of February 16, 2001, ¶¶ 14-17 and which has continued unabated since then." (Pl.'s Opp. at 23 n.7.)

      This Court finds that because S&G's abuse of process defense is predicated on FED. R. CIV. P. 11, it cannot be overcome by New Jersey doctrines, which may or may not dispose of parallel state law affirmative defenses. Cf. <u>Miller v. Fortis Benefits Ins. Co.</u>, 363 F. Supp.2d 700, 706 n.6 (D.N.J. 2005) ("question of when a federal cause of action accrues is determined by federal law even when the federal court borrows the state statute of limitation period"); <u>Puricelli v. Houston</u>, No. CIV. A. 99-2982, 2000 WL 760522, at *6 (E.D. Pa. June 12, 2000) ("Defendants have also asserted the good faith immunity defense set forth in the CPSL. <u>See</u> 23 PA. CONS. STAT. ANN. § 6318. While this defense may immunize Children and Youth Services and its employees from state law causes of action, it is inapplicable to claims arising from alleged

36

violations of federal law"). Because Astro's arguments are rooted entirely in state law, Astro's motion for summary judgment on S&G's federal law abuse of process affirmative defense is denied.

### 2.    *Patent Misuse*

In its fifth affirmative defense, S&G asserts patent misuse as a defense to Astro's counterclaim. (Amended Reply to the Counterclaim at 9.) Astro argues that it is entitled to summary judgment on S&G's claim of patent misuse because S&G cannot adduce sufficient evidence to support the prerequisites of this defense. Astro counters that the patent misuse issue is alive and well.

### a.    Legal Standard Governing Patent Misuse As An Affirmative Defense

"Patent misuse is an affirmative defense to an accusation of patent infringement, the successful assertion of which 'requires that the alleged infringer show that the patentee has impermissibly broadened the 'physical or temporal scope' of the patent grant with anticompetitive effect.'" Virginia Panel Corp. v. MAC Panel Co., 133 F.3d 860, 868 (Fed. Cir. 1997) (quoting Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1001 (Fed. Cir. 1986) (quoting Blonder-Tongue Lab., Inc. v. University of Ill. Found., 402 U.S. 313, 343 (1971)); see also Monsanto Co. v. Scruggs, 459 F.3d 1328, 1339 (Fed. Cir. 2006).

The "policy of the patent misuse doctrine is to prevent a patentee from using the patent to obtain market benefit beyond that which inures in the statutory patent right." Scruggs, 459 F.3d at 1339 (quoting Monsanto Co. v. McFarling, 363 F.3d 1336, 1341 (Fed. Cir. 2004) (internal quotations omitted)).

"The courts have identified certain specific practices as constituting per se patent misuse, including so-called 'tying' arrangements in which a patentee conditions a license under the patent on the purchase of a separable, staple good, and arrangements in which a patentee effectively extends the term of its patent by requiring post-expiration royalties."  Virginia Panel Corp., 133 F.3d at 869.  Courts also have found per se patent misuse whenever the patentee conditions the licensee's right to use his patent "on the licensee's agreement to purchase, use or sell, or not to purchase use or sell, another article of commerce not within the scope of his patent monopoly."  See Zenith Radio Corp. v. Hazeltine Research, 395 U.S. 100, 136 (1969).  For example, the Supreme Court found per se patent misuse where the patentee permitted the licensee to use with the patented machines only salt tablets sold by the patentee.  Morton Salt Co. v. G.S. Suppiger Co., 314 U.S. 488 (1942), abrogated on other grounds.  The Third Circuit has similarly found per se patent misuse in a provision stipulating that the licensee would not manufacture any non-tangling spring washers except those covered by the licensor's patent.  National Lockwasher Co. v. George K. Garrett Co., 137 F.2d 255 (3d Cir. 1943).

"Congress, however, has established that other specific practices may not support a finding of patent misuse."  Id. (citing 35 U.S.C. § 271(d) (1994); Dawson Chem. Co. v. Rohm & Haas Co., 448 U.S. 176, 202 (1980) (construing earlier version of § 271(d)).  "A 1988 amendment to § 271(d) provides that, inter alia, in the absence of market power, even a tying arrangement does not constitute patent misuse."  Id. (citing 35 U.S.C. § 271(d)(5) (1994) (added by Pub.L. No. 100-703, § 201, 102 Stat. 4676 (1988))).

"When a practice alleged to constitute patent misuse is neither per se patent misuse nor specifically excluded from a misuse analysis by § 271(d), a court must determine if that practice

is 'reasonably within the patent grant, i.e., that it relates to subject matter within the scope of the patent claims.'" Id. (quoting Mallinckrodt, Inc. v. Medipart, Inc., 976 F.2d 700, 708 (Fed. Cir. 1992)).  "If so, the practice does not have the effect of broadening the scope of the patent claims and thus cannot constitute patent misuse."  Id.  "If, on the other hand, the practice has the effect of extending the patentee's statutory rights and does so with an anti-competitive effect, that practice must then be analyzed in accordance with the 'rule of reason.'"  Id.

Under the rule of reason, "the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect."  Id. (quoting State Oil Co. v. Kahn, 522 U.S. 3, 10 (1997) (citing Arizona v. Maricopa County Med. Soc., 457 U.S. 332, 343 & n.13 (1982))).

### b.    Whether Plaintiff Has Adduced Sufficient Evidence To Create A Triable Issue Of Fact Regarding Patent Misuse

Astro argues that S&G's patent misuse defense must fail as a matter of law because (1) Astro's mailing of notices of infringement to S&G's customers does not constitute per se patent misuse; and (2) S&G cannot establish that Astro's conduct imposed an unreasonable restraint on competition.

S&G counters that it is not relying on the notice of infringement letters to establish per se patent misuse.  Rather, S&G argues that Astro's settlement agreements with counterclaim defendants Pro Tool, Inc. ("Pro Tool") and C.R.C. Line, Inc. ("CRC"), constitute per se patent misuse.  Astro's stipulation of dismissal of the counterclaim defendants provides in pertinent part

39

that the counterclaim defendants

> and [their] agents, servants, employees, representatives, directors, officers, assigns
> and successors shall refrain from selling, distributing, marketing, using and/or
> manufacturing S&G Eraser Wheels.  Furthermore, [they] shall return all S&G
> Eraser Wheels that it may have in inventory to S&G.

(Doane Decl., Exh. 3, Docket Entry No. 186-4, CRC Stipulation of Dismissal, ¶ 8; Pro Tool

Stipulation of Dismissal, ¶ 7.)

Neither party disputes that whether S&G's eraser wheels infringe the '914 Patent remains

a question of fact to be decided in the trial on this matter.  Assuming that S&G prevails on the

infringement question, S&G's agreements with Pro Tool and CRC constitute per se patent

misuse.  Assuming S&G prevails, the agreements effectively restrain the licensees' (i.e., Pro Tool

and CRC) ability to "purchase, use or sell, or not to purchase use or sell, another article of

commerce not within the scope of [Astro's] patent monopoly."  See Zenith Radio, 395 U.S. at

136.  Because the question of patent misuse turns on whether S&G ultimately is found to be

infringing the '914 Patent – a question of fact to be decided by the ultimate factfinder – a triable

issue of fact remains regarding S&G's patent misuse affirmative defense.  Therefore, Astro's

motion for summary judgment on S&G's patent misuse affirmative defense is denied.[17]

## IV.  CONCLUSION

For the reasons stated above, Astro's motion for partial summary judgment is granted in

part and denied in part.  Summary judgment will be granted for Astro on S&G's declaratory

---

[17]S&G does not purport to propound evidence demonstrating that Astro's conduct
imposes an unreasonable restraint on competition.  Because S&G seeks to establish per se patent
misuse, and because a triable fact remains regarding whether Astro engaged in per se patent
misuse, S&G need not proffer such evidence to survive Astro's motion for summary judgment on
its patent misuse affirmative defense.

judgment claim for invalidity, and its Lanham Act, state law unfair competition, New Jersey

Trade Act, and tortious interference claims.  Astro's motion for summary judgment on S&G's

affirmative defenses of abuse of process and patent misuse is denied.


Dated: March 30, 2007                              _____
                                                           s/ Joseph A. Greenaway, Jr.
                                                   JOSEPH A. GREENAWAY, JR., U.S.D.J.